(No. 81619.—)

ALICE WILLIAMS *et al.*, Appellants, v. UNIVERSITY OF CHICAGO HOSPITALS *et al.*, Appellees.

*Opinion filed October 23, 1997.*

Arnold Bernstein, of Arlington Heights, for appellants.

William V. Johnson and Charles W. Planek, of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Mindy Kallus, of counsel), for appellees.

Bruce Robert Pfaff, of Chicago (Francis T. Timons, of counsel), for *amicus curiae* Illinois Trial Lawyers Association.

Cassiday, Schade & Gloor, of Chicago (Carolyn Quinn and Rudolf G. Schade, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE MILLER delivered the opinion of the court:

The plaintiffs, Alice and Jerry Williams, who are husband and wife, brought the present action in the circuit court of Cook County seeking compensation for the extraordinary expenses of raising a child who was born following a failed sterilization operation performed on Mrs. Williams. The plaintiffs allege that the child has attention deficit hyperactivity disorder, a congenital condition, which will require him to receive psychological treatment and special educational training in the future. Ruling on two pretrial motions, the trial judge concluded that the plaintiffs could recover the extraordinary expenses they will incur in treating their son's

condition but could not present certain testimony describing educational needs he will have. The judge certified those two questions for interlocutory appeal under Supreme Court Rule 308. The appellate court held that the plaintiffs could not recover the extraordinary child-rearing expenses they seek; with that determination the appellate court found it unnecessary to resolve the second certified question. 281 Ill. App. 3d 1057. We allowed the plaintiffs' petition for leave to appeal (155 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The procedural history of this case requires only a brief summary. According to the plaintiffs' fourth amended complaint, Mrs. Williams underwent a tubal ligation at the University of Chicago Hospitals in July 1984. The complaint alleges that her medical history included a possible ectopic pregnancy in 1979, a stillborn child in 1982, a premature birth in 1984, and "at least one hyperactive and learning disabled child." Defendant Dr. Lane Mercer performed the sterilization procedure, and the plaintiff saw Dr. Mercer and, later, defendant Dr. Ann Zielinski, over the course of the next seven years. During that time, at subsequent appointments, the defendants never informed Mrs. Williams that the tubal ligation was other than successful. Following a laparoscopy performed in 1988 by Dr. Mercer and Dr. Zielinski, Mrs. Williams was told that the devices used in the procedure were properly placed. Mrs. Williams learned in May 1991 that she was pregnant, however, and she gave birth in October 1991 to the child who is the subject of the instant appeal, Emmanuel. According to the complaint, Emmanuel has attention deficit hyperactivity disorder and will require psychological treatment and special educational training in the years ahead. The plaintiffs brought the present negligence action against the University of Chicago Hospitals and

Drs. Mercer and Zielinski, seeking recovery of those extraordinary expenses.

The origins of this appeal lie in certain pretrial rulings made by the trial judge. Before trial, the defendants filed motions *in limine* seeking to limit the evidence that could be introduced by the plaintiffs. Although the motions are not included in the record on appeal, the record does contain transcripts of the hearings on the motions. Following argument by the parties, the trial judge concluded that the plaintiffs could recover damages for the extraordinary costs they will incur as a result of the child's condition. The trial judge also ruled, however, that the plaintiffs could not present expert testimony regarding certain educational services that the child will require, in light of the state's constitutional duty to provide a free public education to children.

At the parties' request, the trial judge certified the following two questions for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308):

"[1] Do the parents of a child born following a failed tubal ligation have a cause of action for special damages against the treating physicians and hospital for the extraordinary psychological and/or educational expenses which may be incurred in raising their child, where the complaint alleges that Mrs. Williams' medical history included a hyperactive son by another father, but there are no allegations or proof that the Defendants proximately caused Emmanuel Williams' Attention Deficit Hyperactivity Disorder?

[2] Where plaintiff[s'] expert testifies that the public school will more likely than not fail to provide the appropriate special education, special therapy or mental treatment, should the plaintiff[s] be allowed to present evidence, as part of their damages, showing the future extraordinary educational expenses of the abnormal child in a wrongful pregnancy action?"

The appellate court accepted the case for review (155

Ill. 2d R. 308(a)) and answered the first question in the negative. 281 Ill. App. 3d 1057. The appellate court believed that the defendants' alleged negligence was not the proximate cause of the injury complained of, and the court therefore concluded that the plaintiffs could not recover from the defendants the extraordinary costs of raising the child at issue in this case. The court's decision rendered moot the second question certified by the trial judge. We granted the plaintiffs' petition for leave to appeal (155 Ill. 2d R. 315(a)), and we later allowed the Illinois Trial Lawyers' Association and the Illinois Association of Defense Trial Counsel to submit briefs as *amici curiae* (155 Ill. 2d R. 345(a)).

It will be helpful at the outset to clarify the various causes of action that have previously been asserted by parents and children for birth-related torts. An action for "wrongful pregnancy" or, as it has also been termed, "wrongful conception"—the action involved here—may be brought by parents following a negligently performed sterilization procedure. In an action for wrongful pregnancy, the parents seek to recover compensation for the expenses of the pregnancy they sought to avoid. *Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230, 256 (1987). This court noted in *Cockrum v. Baumgartner*, 95 Ill. 2d 193, 196 (1983), that parents bringing such an action are generally permitted to recover damages for the cost of the unsuccessful operation, pain and suffering, any medical complications caused by the pregnancy, the costs of the child's delivery, lost wages, and loss of consortium. The recovery of those items is not at issue here. In contrast to those damages, however, *Cockrum* held that parents may not be awarded the expenses of raising a normal, healthy child born following the negligently performed procedure.

An action for "wrongful birth," a distinct cause of action, refers to a suit brought by parents who allege

that they would not have conceived a child or carried one to term if it had not been for the defendant's negligence in "prenatal testing, genetic prognosticating, or counseling parents as to the likelihood of giving birth to a physically or mentally impaired child." *Siemieniec,* 117 Ill. 2d at 235. In *Siemieniec,* parents who alleged that they received incorrect information regarding the likelihood that a child conceived by them would have hemophilia were allowed to recover "the extraordinary expenses—medical, hospital, institutional, educational and otherwise—which are necessary to properly manage and treat the congenital or genetic disorder." *Siemieniec,* 117 Ill. 2d at 260.

Finally, "wrongful life" is the term used to describe an action asserted by a parent or guardian on behalf of a minor in which the child seeks compensation for the failure to give his or her parents proper advice regarding the child's congenital condition. *Siemieniec,* 117 Ill. 2d at 236. In *Goldberg v. Ruskin,* 113 Ill. 2d 482, 486 (1986), this court refused to recognize an action for wrongful life, noting the nearly universal rejection by courts of a child's recovery of general damages under a wrongful-life theory, a result founded "on the value of life and the inherent difficulty of ascertaining a cognizable injury for which damages may be meaningfully awarded." *Siemieniec* later reaffirmed *Goldberg* by denying the child's separate wrongful-life claim in that case. *Siemieniec,* 117 Ill. 2d at 238-53.

The present appeal involves only an action for wrongful pregnancy, brought by the parents of a child born after an unsuccessful sterilization procedure, and the dispositive question in this case is whether the plaintiffs may recover damages for the extraordinary expenses that they allege they will incur in raising a child who is said to have a congenital defect. The plaintiffs believe that *Cockrum,* properly construed, bars

only the recovery of the expenses of rearing a child who is healthy and normal, and the plaintiffs contend that *Cockrum* is not controlling here because they seek recovery of the extraordinary expenses of raising a child who is alleged to be other than healthy and normal. The plaintiffs further note that *Siemieniec* allowed parents to recover, in a wrongful-birth action, extraordinary expenses of a child who suffered from a congenital malady, and the plaintiffs contend that the same type of recovery should be permitted in their action for wrongful pregnancy. The plaintiffs maintain that the birth of a child with congenital abnormalities, like their son, is a foreseeable consequence of a negligently performed sterilization procedure.

Authorities in other jurisdictions are divided on the question whether parents may recover extraordinary child-rearing expenses in what would be termed wrongful-pregnancy actions, with some courts denying recovery (see *Williams v. Van Biber*, 886 S.W.2d 10 (Mo. App. 1994); *Simmons v. Hertzman*, 99 Ohio App. 3d 453, 651 N.E.2d 13 (1994)) and other courts allowing it (see *Fassoulas v. Ramey*, 450 So. 2d 822 (Fla. 1984); *Emerson v. Magendantz*, 689 A.2d 409 (R.I. 1997)). We believe that familiar principles of tort law, as well as considerations of public policy, expressed in our prior cases on this subject, bar the recovery sought by the plaintiffs.

To prevail in an action for medical malpractice, a plaintiff must establish that the defendant's breach of a duty of due care proximately caused the injury complained of, resulting in damages. See *Addison v. Whittenberg*, 124 Ill. 2d 287, 297 (1988). The plaintiffs argue that the birth of an unhealthy child was a natural and foreseeable consequence of the defendants' negligence. We do not believe that the allegations found in the plaintiffs' fourth amended complaint are sufficient to establish that the defendants' conduct proximately caused

the injury complained of. There are no allegations in the present case that the defendants caused the child's condition or misled the parents about the likelihood that a child born to them would be defective. Indeed, the plaintiffs acknowledge in their briefs before this court that they do not contend that the defendants caused their son's condition or that the defendants could have detected the condition before the child was born. Nor do the plaintiffs allege that the defendants knew that Mrs. Williams sought sterilization as a means of avoiding the conception of a child with the particular defect involved here. Without determining in this case whether such an allegation would be sufficient to sustain recovery under a wrongful-pregnancy theory, we do not believe that proximate cause can be established in the absence of allegations forging a closer link between the defendants' negligence and the eventual birth of the defective child.

In *Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 380 (1943), this court stated:

"What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. [Citations.]"

Thus, "[i]f the result is one that an ordinarily prudent person would have foreseen as likely to occur, then the party will be held responsible, even if the precise injury which resulted is not foreseen." *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 393 (1986).

We do not believe that the plaintiffs can establish that the defendants' conduct was a proximate cause of their injury, for under the allegations in this case the plaintiffs' injury cannot be said to be of such a character

that an ordinarily prudent person should have foreseen it as a likely consequence of the alleged negligence. The plaintiffs do not allege that any act or omission by the defendants caused the child's condition, that the defendants knew of the possibility that a child conceived in the wake of a failed operation would suffer from a particular defect, or even that the parents were seeking to avoid a specific risk and that the defendants were aware of that, assuming that allegations of that nature would be a sufficient basis for liability.

The plaintiffs argue, however, that in this case the defendants had notice of Mrs. Williams's medical history, which included a possible ectopic pregnancy in 1979, a stillbirth in 1982, a premature birth in 1984, and "at least one hyperactive and learning disabled child." The plaintiffs, in substance, contend that the defendants may be liable here because they were aware, or should have been aware, of Mrs. Williams's prior maternity-related problems, including the birth of a hyperactive child. We find the plaintiffs' argument unpersuasive. The plaintiffs do not allege that Mrs. Williams sought sterilization as a means of avoiding conception of a child with that defect; there are no allegations here that would make the birth of a child with the defect a foreseeable consequence of the defendants' negligence.

Thus, we cannot say that the alleged negligence was the proximate cause of the plaintiffs' injury in this case. Because the plaintiffs are unable to establish proximate causation, their action for negligence must necessarily fail. Proximate cause is a question of fact for the jury unless there is no material issue regarding the matter or only one conclusion is clearly evident. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995); *Gill v. Foster*, 157 Ill. 2d 304, 310-11 (1993); *Thompson v. County of Cook*, 154 Ill. 2d 374, 382 (1993). Here, we believe it is appropriate to determine the question as a

matter of law, for the complaint fails to disclose any allegations that, if true, would establish proximate cause.

On these grounds, then, we must distinguish our decision in *Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230 (1987). In *Siemieniec*, the plaintiffs alleged that the defendants provided incorrect information regarding the likelihood that a child conceived by them would be afflicted with hemophilia, preventing the parents from making an informed decision about whether to conceive a child or carry one to term. The present action, for wrongful pregnancy, is fundamentally different. As we have noted, the plaintiffs recognize in their briefs that they do not allege that the defendants caused their son's condition or that the defendants should have detected the condition before the child was born. Thus, there are no allegations here that the defendants failed to properly advise the parents about the likelihood that a child conceived by them would be afflicted with a particular condition, or that the defendants failed to test the fetus to disclose the possible existence of a condition. Moreover, the plaintiffs do not allege that the defendants were aware of any extraordinary need on the part of the parents to avoid conceiving a child, assuming again that allegations of that nature would be sufficient to sustain liability. We leave unresolved the question whether parents like the Siemieniecs, with a particular need to avoid conception of a child, and who communicate that need to the defendant who performs the sterilization procedure, may recover as damages the extraordinary expenses of raising a child born in the wake of an unsuccessful and negligently performed operation.

The plaintiffs also cite *Doerr v. Villate*, 74 Ill. App. 2d 332 (1966), in support of their attempt to recover special damages. In *Doerr*, a husband sought and obtained a vasectomy because of congenital problems

with the couple's two prior children. The husband's wife later became pregnant, however, and the child born as a result of the pregnancy was afflicted with similar problems. The wife brought an action against the doctor who performed the procedure, attempting to recover the extraordinary costs that would be incurred in raising the child. Without being asked to decide the question, the appellate court assumed the validity of the plaintiff's cause of action in that case, and the sole question on appeal involved the timeliness of the action; the appellate court agreed with the wife that her action was for breach of contract and was timely under the longer limitations period applicable to contract actions.

Finally, we believe that allowing recovery of extraordinary child-rearing expenses in these circumstances would be inconsistent with the decision in *Cockrum v. Baumgartner*, 95 Ill. 2d 193 (1983). Although *Cockrum* spoke in terms of healthy, normal children, we are reluctant to permit the recovery of the special costs of raising children who allegedly fail to fit that description, in the absence of allegations and proof that the defendant performing the sterilization procedure knew or should have known of the parents' particular need to avoid conception. The plaintiffs would in effect carve out an exception to the rule announced in *Cockrum*, allowing compensation for wrongful birth when a child born following a failed sterilization procedure is alleged to be other than healthy and normal. As this court noted in *Siemieniec*, however, virtually everyone is born with some condition, characteristic, or trait that might be construed as rendering the person other than healthy and normal, and we believe that the exception asserted by the plaintiffs, if recognized, would eventually eclipse the limitation on recovery established in *Cockrum*. In discussing the wrongful-life action brought on behalf of the child in *Siemieniec*, this court stated, " 'No man is

perfect. Each of us suffers from some ailments or defects, whether major or minor, which make impossible participation in all the activities the world has to offer. But our lives are not thereby rendered less precious than those of others whose defects are less pervasive or less severe.' " *Siemieniec*, 117 Ill. 2d at 251, quoting *Berman v. Allan*, 80 N.J. 421, 430, 404 A.2d 8, 13 (1979). Although *Cockrum* described the children involved in that appeal as being healthy and normal, we do not believe that allegations of a child's particular impairment alter the balance struck in that case, at least in the absence of specific allegations that the defendant knew or should have known of the parents' desire to avoid conception of a child with a particular condition.

Given our resolution of the first question certified by the trial court, we have no occasion here to address the second. For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE HARRISON, dissenting:

I am pleased that my colleagues still recognize that all human life is precious. I wonder, though, why they save that observation for this case. No one here is suggesting or has ever suggested that Emmanuel's attention deficit hyperactivity disorder renders him any less of a person or makes him less deserving of parental love or the protection of the law than other children.

My colleagues rightly point out that we all have faults and that none of us is perfect. Again, however, I wonder what that really has to do with the dispute before us. While we may all suffer congenital deficiencies, not all such deficiencies stand on the same plane. Contrary to the majority's implication, lack of athletic ability or short stature or the gene for male pattern baldness are qualitatively different than birth defects or mental disorders, and the law should be sophisticated

enough to tell the difference. Allowing recovery for the extraordinary expenses associated with treating a serious and medically recognized congenital defect of the sort afflicting Emmanuel does not mean that we will also be obliged to allow claims by parents who are simply disappointed that their offspring do not possess all of the attributes of some idealized "normal" child.

In *Cockrum v. Baumgartner*, 95 Ill. 2d 193 (1983), this court relied heavily on public policy considerations in assessing whether and to what extent recovery should be allowed in so-called "wrongful pregnancy" cases such as this. The court determined that such considerations precluded actions to obtain reimbursement for the regular costs associated with rearing a child. Emmanuel's parents, however, are not asking to recover such costs, and nothing in *Cockrum* precludes recovery for the type of costs involved here.

Treatment of Emmanuel's condition will involve extraordinary expenses, not faced by other parents, that would never have arisen if defendants had performed the tubal ligation properly. There is no sound public policy justification for placing the burden of those expenses on Emmanuel's parents rather than the responsible parties. If we really value the sanctity of life and the importance of the family unit, we should allow recourse to the parents who have been the victims of medical malpractice and who will have to deal with its consequences on a day-to-day basis. Permitting the medical providers to escape the consequences of their mistakes accomplishes nothing.

Following *Cockrum,* this court held in *Siemieniec v. Lutheran General Hospital,* 117 Ill. 2d 230, 258-60 (1987), that the parents of a genetically or congenitally defective child may bring a wrongful pregnancy action to recover the

"extraordinary expenses—medical, hospital, institutional, educational and otherwise—which are necessary to

properly manage and treat the congenital or genetic disorder."

This holding should be dispositive of the matter before us today.

The notion advanced by the majority here that plaintiffs' claim must fail because they did not specifically allege that the defendants "knew or should have known of the parents' desire to avoid conception of a child with a particular condition" (179 Ill. 2d at 91) is based on an overly narrow interpretation of *Siemieniec*. In any conception and birth there is a risk of congenital defects, and whenever a doctor performs a sterilization, he knows or should know that a child may be born with such defects if the sterilization is performed improperly. That is enough, in my view, to satisfy the issue of foreseeability. Requiring that the parents be concerned about a particular defect makes no sense and serves no purpose.

Consider, for example, a mother who is sterilized because she fears her child will be born with a hereditary disorder such as Tay-Sachs Disease; the sterilization is done negligently; the mother conceives; and the resulting child is born not with Tay-Sachs, but with spina bifida. There is still a congenital defect, but because it was not the one anticipated, the majority's view would leave the mother without recourse for the extraordinary expenses she will incur in raising the child. In effect, the doctor would escape liability based on nothing more than the turn of the genetic roulette wheel. Chance is no basis for a rule of law, especially where the consequences are as serious as the welfare of an afflicted child.

For the foregoing reasons, I would answer the first certified question in the affirmative. Emmanuel's parents may bring an action against the physicians and hospital responsible for his mother's failed tubal ligation to recover the extraordinary expenses they will

incur in connection with his attention deficit hyperactivity disorder. The judgment of the appellate court should therefore be reversed, and the cause should be remanded to that court with directions to answer the second question certified by the circuit court.

JUSTICE BILANDIC joins in this dissent.