DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants Theresa and James Simmerer appeal from the judgment of the Summit County Court of Common Pleas which granted appellee Dr. Mohamed Dabbas partial summary judgment. We affirm.
 I.
Theresa and James Simmerer had two children in May 1992, when they decided that for economic reasons they wanted to limit their family size. Consequently, they decided that Theresa would undergo a permanent sterilization procedure, known as a tubal banding. They chose appellee Dr. Mohammed Dabbas to perform the operation, which he did on May 29, 1992. The tubal banding procedure involves placing "fallope rings" around both fallopian tubes, to prevent the egg from traveling through the fallopian tube to the uterus for fertilization. Unfortunately, Dr. Dabbas negligently performed the operation, and one fallope ring was placed on the left round ligament, rather than on the fallopian tube. Theresa became pregnant and on March 13, 1993, she gave birth to Steven Lee. Steven was soon diagnosed with Tetralogy of Fallot, a congenital heart defect. He spent many months in the hospital, and his treatments included several open-heart surgeries. James and Theresa filed medical negligence claims against Dr. Dabbas and others, with claims of wrongful pregnancy and wrongful birth resulting from the negligent sterilization.
Steven died on June 7, 1994, during the pendency of this case. Bills incurred for medical treatment during Steven's short life amounted to some $547,000. In September 1997, the Simmerers and Dr. Dabbas settled out of court for the wrongful pregnancy portion of the claim, in the amount of $60,000, to compensate for the medical bills relating to the pregnancy itself, as well as Theresa's pain and suffering. Dr. Dabbas then filed a Motion for Partial Summary Judgment as to the wrongful birth and wrongful life claims.[1] The trial court granted summary judgment for defendant, and the Simmerers filed the instant appeal. They make a single assignment of error.
 II. THE TRIAL [COURT] ERRED IN GRANTING DEFENDANT/APPELLEES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF DAMAGES RECOVERABLE IN THIS WRONGFUL CONCEPTION/WRONGFUL BIRTH CASE SOUNDING IN MEDICAL NEGLIGENCE.
The trial court granted Dr. Dabbas' motion for partial summary judgment as to the "claims for wrongful birth and wrongful life[.]" The court made no finding of facts or conclusions of law in support of the decision. However, we must note that to prevail in the trial court on summary judgment, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292. To accomplish this, the movant must be able to point to "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Id.
at 293. Only after such evidence is produced, is the non-moving party obliged to produce evidence that some issue of material fact remains for the trial court to resolve. Id.
In reviewing a grant of summary judgment, the appellate court must examine the record de novo and must view the facts in the case in the light most favorable to the non-moving party. Graftonv. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
Dr. Dabbas, in the statement of facts in his appellate brief, acknowledges that during his sterilization of Mrs. Simmerer, he "inadvertently" misplaced the fallope ring on the left round ligament, rather than on the fallopian tube itself. Both sides also agree that Mrs. Simmerer became pregnant after the negligent sterilization. Both parties recognize that Mrs. Simmerer had a valid claim against Dr. Dabbas for wrongful pregnancy, given the holding of the Ohio Supreme Court in Johnson v. UniversityHospitals of Cleveland (1989), 44 Ohio St.3d 49. They have settled that claim in an amount representing the medical costs relating to the pregnancy itself and the pain and suffering experienced by Mrs. Simmerer during the pregnancy and birth. Finally, both sides recognize that Steven was born with a congenital heart condition which was totally unrelated to the negligent sterilization itself.
What remained to be decided by the trial court was whether or not plaintiffs had a valid claim for wrongful birth. Ohio cases dealing with this issue are few, so our discussion will include those of other jurisdictions for purposes of comparison.
 LEGALLY COGNIZABLE CLAIMS Actions in medical negligence surrounding an unplanned birth or the birth of a child with congenital birth defects result in three types of claims: wrongful life, wrongful birth, and wrongful pregnancy.
A wrongful life claim is brought by or for the child born with birth defects, in his own right, for the extraordinary expenses of his care and for his pain and suffering arising from his condition. Ohio does not recognize a wrongful life claim, nor do most other states. The Ohio appellate court in Flanagan
voiced the opinion of most courts when it concluded, "we are not prepared to say that life, even with severe disabilities, constitutes an actionable injury." Flanagan v. Williams,87 Ohio App.3d 768, 776, citing High v. Howard (1992), 64 Ohio St.3d 82, overruled on other grounds. In the instant case, the Simmerers maintain that they are not seeking damages under a wrongful life claim.
The second cause of action is one for wrongful birth. Cases proceeding under this cause of action generally involve the failure to diagnose a genetic defect in the fetus of a pregnant woman.[2] The failure to diagnose has been held to be a denial of informed consent, which precluded the mother's ability to choose whether or not to terminate the pregnancy because she lacked appropriate information about the genetic defect. An appellate court in Ohio, applying tort principles, found that plaintiff parents had stated a cause of action, and reversed the lower court's judgment on the pleadings against plaintiffs.Flanagan v. Williams (1993), 87 Ohio App.3d 768.[3] The salient feature of this class of claims is the foreseeability factor. Not only were the doctors negligent in failing to diagnose, but in many cases these doctors were clearly advised of the specific genetic problem that was likely to be present.
The third cause of action, and the one which the Simmerers pursue in the instant case, is wrongful pregnancy. This claim is usually associated with a failed sterilization procedure, which ultimately results in an unwanted pregnancy. Claims under this cause of action always seek to recover the costs of the pregnancy, the delivery, and a second sterilization, plus compensation for the mother's pain and suffering, and for emotional damages, where appropriate. In Ohio, the Supreme Court has recognized this limited recovery principle in a wrongful pregnancy claim. Johnsonv. University Hospitals of Cleveland (1989), 44 Ohio St.3d 49, at paragraph two of the syllabus. Sometimes plaintiffs ask for normal childcare expenses where the child is born healthy. This was the situation in Bowman v. Davis (1976), 48 Ohio St.2d 41
(affirming the appellate court's support of the jury's general award for a negligent sterilization, resulting in the birth of twins, one of whom was healthy).[4] As in the instant case, some plaintiffs ask only for the extraordinary medical and educational expenses required for the care of the unhealthy child. See Emerson v. Magendantz (R.I. 1997), 689 A.2d 409.
Virtually all states have recognized a wrongful pregnancy cause of action[5] and, like Ohio, many recognize only a limited recovery. While courts have held that there is no obligation on the part of the mother to mitigate the harm by way of abortion or adoption, generally, the costs of raising a healthy child have not been awarded. In Johnson v. UniversityHospitals, 44 Ohio St.3d 49, the Supreme Court of Ohio held that it was against public policy to hold that the birth of a healthy child was a compensable harm to the parents.[6]
The appellants in the case sub judice seek compensation for the extraordinary medical and educational costs associated with the birth of an unhealthy child. The Ohio Supreme Court in Bowman
used a traditional tort/negligence analysis, and affirmed the decision of the court of appeals to let stand the jury's general verdict which awarded damages to the parents of twins, one healthy and one brain-damaged, born after a negligent sterilization. It specifically declined to address whether damages beyond pregnancy expenses were proper, since it was not raised below. Bowman,48 Ohio St. 2d at 44 n. 1. The Supreme Court in Johnson, supra,
decided that a healthy child is not an injury to the parents, and thus limited recovery in wrongful pregnancy to the damages incident to the pregnancy itself. It did not need to address the issue of what damages might be compensable when the child born was not healthy.
For such cases, the real sticking point is the lack of causality between the failed sterilization and the birth defect itself. Thus, the appellate court in Simmons v. Hertzman, reasoning that the negligently performed vasectomy was not the natural and probable cause of the child's birth defect, found lack of proximate cause.[7] Simmons v. Hertzman (1994), 99 Ohio App.3d 453,458, discretionary appeal not allowed (1995), 72 Ohio St.3d 1421. The court found that the plaintiffs failed to show that the negligent sterilization by the doctor increased the likelihood that the child would be born with abnormalities. Id. Finally, the Simmons
court was unwilling make the next analysis, implicit in Johnson, that an unhealthy child may not be the pure benefit to the parents that, presumptively, a healthy child is. The Simmons court believed it unwise to try to plumb the depths of a philosophical debate as to where a "healthy child" ends and an "abnormal child" begins. Id.
The Simmerers would have us extend the holding of the Fourth District Court of Appeals in Flanagan v. Williams, which reversed the trial court's determination that plaintiffs in a wrongful birth action based on a failure to diagnose had not stated a claim on which relief could be granted. In that case, the appellate court concluded that plaintiff parents had met their burden of stating a claim, and should have the opportunity to "prove that the injury complained of, here the denial of their right to make an informed choice about pregnancy termination, was directly and proximately caused" by the doctor's negligence.Flanagan v. Williams, 87 Ohio App.3d at 773. In the instant case, no such clear causal link can be established between the injury (the birth of a child with congenital heart problems) and the failed sterilization procedure.
To date, controlling case law in Ohio limits recovery in circumstances such as the instant case, to recovery for the incident costs, pain and suffering associated with the pregnancy itself. This being so, Dr. Dabbas met his burden in moving for summary judgment. That is, he has shown that there remained before the trial court no genuine issue of material fact, and that he was entitled to judgment as a matter of law. That burden having been met, the burden shifted to the Simmerers to show evidence that there was a genuine issue of material fact. SeeValhila v. Hall (1997), 77 Ohio St.3d 421, 430. This they have not done.
We therefore overrule appellants' assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Summit County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellants.
Exceptions.
___________________________
WILLIAM R. BAIRD FOR THE COURT
SLABY, J.
REECE, J.
CONCUR
(Reece, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)
[1] The trial court said that after the settlement of the wrongful pregnancy claim, the issues of wrongful birth and wrongful life remained, and were dismissed in summary judgment. The Simmerers state that they never made a claim for wrongful life, which is a claim made on behalf of the child for expenses, pain and suffering incurred due to his physical disability. This claim is usually made against doctors who negligently failed to advise expecting parents of the unborn child's birth defect, thus preventing the parents from electing to terminate the pregnancy.
[2] As discussed in more detail below, the wrongful pregnancy cause of action can include a claim for the ongoing extraordinary medical and educational expenses of the child born with genetic problems. Although not called "wrongful birth" (because the wrong began in the unwanted pregnancy, not in the failed diagnosis of genetic problems in the already-existing fetus), the damages claimed are substantially the same. The problem in applying the same legal principles in both the failure to diagnose cases and in the failed sterilization cases, is that in the former cases, it is usually not difficult to prove that the defendant's negligence was the proximate cause of the injury. Specifically, it is much easier to make the requisite showing of foreseeability of the injury resulting from the medical negligence.
[3] See the following cases which hold that plaintiffs have a valid wrongful birth claim: Siemieniec v. Lutheran Gen. Hosp.
(Ill. 1987), 512 N.E.2d 691; Gallagher v. Duke Univ. (C.A.4, 1988),852 F.2d 773; Lininger v. Eisenbaum (Colo. 1988), 764 P.2d 1202,1207-1208 (stating that this is not a new cause of action, but a traditional tort claim), Procanik v. Cillo (N.J. 1984),478 A.2d 755, 761 (holding that extraordinary medical expenses for the care of the child are "predictable, certain and recoverable"). But seeAzziolino v. Dingfelder (N.C. 1985), 337 S.E.2d 528, certiorari denied (1986), 479 U.S. 835, 93 L.Ed.2d 275, which refused to recognize wrongful birth as a legally compensable claim absent a mandate from the legislature.
More recently a number of states have enacted laws to prohibit both wrongful life and/or wrongful birth claims. Generally, these laws prohibit claims by the afflicted child that, but for the negligent diagnosis, the child would have been aborted. Additionally, several states have prohibited claims brought by the parents, on the basis that but for the negligent diagnosis the parent would have terminated the pregnancy. However, these states will allow a claim for negligent diagnosis (and the ensuing wrongful birth), if the plaintiff can show that but for the negligent diagnosis, the parent could have taken steps to correct or ameliorate the birth defect. Among the state laws imposing some limitation on pregnancy-related claims are: Idaho Code 5-334(1); Minn.Stat. 145.424(1), (2); Mo.Rev.Stat. 188.130.2; N.D.Cent. Code 32.03-43; 42 Pa.Cons.Stat. 8305(a); S.D. Codified Laws 21-55-1 to 2; and Utah Code 78-11-24.
[4] For decisions from other jurisdictions with this scenario, see Hartke v. McKelway (C.A.D.C. 1983), 707 F.2d 1544, certiorari denied (1983), 464 U.S. 983, 78 L.Ed.2d 360; James G. v. Caserta
(W.Va. 1985), 332 S.E.2d 872 (combined cases, one failed sterilization, one failure to diagnose); Smith v. Gore
(Tenn. 1987), 728 S.W.2d 738; Fassoulas v. Ramey (Fla. 1984),450 So.2d 822; Jones v. Malinowski (Md. 1984), 473 A.2d 429. A recent Maine statute, Me.Rev.Stat. Tit. 24, Sec. 2931, recognized a limited cause of action for wrongful birth.
[5] The recent Emerson decision reported that only one state (Nevada) does not recognize the tort of wrongful pregnancy, but even that state recognizes a contract action in a failed sterilization. The Rhode Island Supreme Court also reported that thirty of the forty-nine states recognizing wrongful pregnancy actions have taken a "limited damages" approach, denying the costs of raising a health child. Emerson v. Magendantz, supra, at 411.
[6] Some courts, and many judges in dissent, have urged that after Roe v. Wade (1973), 410 U.S. 113, 35 L.Ed.2d 147, it is impermissible for a court to impose such values. Thus, in 1978, the Ohio Supreme Court wrote, in Bowman v. Davis, 48 Ohio St.2d 41,46 "The choice not to procreate, as part of one's right to privacy, has become * * * a Constitutional guarantee. For this Court to endorse a policy that makes physicians liable for the foreseeable consequences of all negligently performed operations except those involving sterilization would constitute an impermissible infringement of a fundamental right." (Citations omitted.) Yet other courts, when finding for plaintiffs in these cases, have held that the issue of the benefit and burden of the healthy child to the plaintiffs is the question of fact, which appropriately should be left to the jury to decide. These courts have taken the approach that a wrongful pregnancy action is really a traditional tort claim of negligence, with traditional analysis of duty, breach, harm, proximate cause, and measurable remedies. Thus, for example, the Illinois Supreme Court inWilliams v. University of Chicago Hospitals (Ill. 1997),688 N.E.2d 130, suggested that in future cases, where a doctor is on notice of the parent/patient's particular need not to conceive, the injury resulting from a negligent sterilization may be sufficiently foreseeable to allow the plaintiffs to recover all extraordinary expenses for raising the disabled child.
[7] Several courts in foreign jurisdictions have reasoned that foreseeability is a question of fact for the jury to determine. Specifically, to what extent was the doctor was on notice of the prospective parent's need to avoid conception? If an individual advises the physician that s/he is seeking sterilization to avoid conception because of a known genetic propensity for a birth defect, then the doctor can or should foresee the injury that would likely result from a negligent sterilization. Such advance notice to the doctor of the reason for avoiding the pregnancy would obviate any proof that the injury was foreseeable. SeeWilliams v. Univ. of Chicago Hospitals (Ill. 1997), 688 N.E.2d 130,135 (leaving open the possibility that under these circumstances the doctor would be liable for the extraordinary costs of caring for the unhealthy child), and Emerson v. Magendantz (R.I. 1997),689 A.2d 409, 414 (would hold the doctor liable for normal and extraordinary costs of caring for child, even beyond the child's majority if he cannot support himself). Hartke v. McKelway
(C.A.D.C. 1983), 707 F.2d 1544, 1555, would expand this to include financial reasons for avoiding any pregnancy, allowing a rebuttable presumption of injury, which could be overcome by showing that the conditions underlying the desire to avoid pregnancy (e.g. financial problems) no longer exist.