# Illinois Official Reports

## Appellate Court

---

### *Williams v. Rosner*, 2014 IL App (1st) 120378

---

| | |
|---|---|
| Appellate Court Caption | CYNTHIA WILLIAMS and KENNETH WILLIAMS, Individually, and as Parents and Next Friends of Kennadi Williams, a Minor, Plaintiffs-Appellees, v. BYRON ROSNER, M.D., and REPRODUCTIVE HEALTH ASSOCIATES, S.C., a For-Profit Corporation, Defendants-Appellants. |
| District & No. | First District, Third Division<br>Docket No. 1-12-0378 |
| Filed<br>Rehearing denied | February 26, 2014<br>April 10, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Pursuant to a question certified *nunc pro tunc* for interlocutory review pursuant to Supreme Court Rule 308, the appellate court responded that plaintiffs in a wrongful pregnancy action may recover for the extraordinary expenses involved in raising a child afflicted with sickle cell disease when defendant physician knew plaintiff and her husband were carriers of the sickle cell trait, that plaintiffs had previously conceived a child with sickle cell disease and that plaintiffs desired sterilization to avoid giving birth to another child afflicted with sickle cell disease. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-12558; the Hon. John P. Kirby, Judge, presiding. |
| Judgment | Certified question answered in the affirmative. |

Counsel on
Appeal

Donohue, Brown, Mathewson & Smyth, LLC, of Chicago (Richard H. Donohue, Karen Kies DeGrand, and Todd J. Stalmack, of counsel), for appellants.

Cochran, Cherry, Givens, Smith & Montgomery, LLC, of Chicago (James D. Montgomery and Beverly P. Spearman, of counsel), for appellees.

Patrick E. Dwyer III, of Dwyer, McCarthy & Associates, of Chicago, for *amicus curiae* Illinois Trial Lawyer's Association.

Panel

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Neville and Mason concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs Cynthia Williams and Kenneth Williams, individually, and as parents and next friends of Kennadi Williams, a minor, filed a complaint advancing claims of negligence and wrongful pregnancy against defendants Byron Rosner, M.D., and Reproductive Health Associates (Reproductive Health). Among the damages that plaintiffs sought to recover were the extraordinary expenses that they would incur in raising their daughter, who was born with sickle cell disease following an unsuccessful sterilization procedure. Defendants filed a motion to dismiss the wrongful pregnancy action filed by plaintiffs, arguing their claim failed as a matter of law because there was no authority permitting plaintiff parents who file wrongful pregnancy actions in Illinois to recover the extraordinary expenses they would incur in raising a child who is born with a genetic abnormality. The circuit court denied defendants' motion to dismiss; however, it recognized that the case involved an issue of law as to which there were substantial grounds for differing opinions and certified a question for appellate review. For the reasons explained herein, we answer the certified question in the affirmative.

¶ 2                                  I. BACKGROUND

- 2 -

¶ 3        Cynthia and Kenneth Williams are both carriers of the sickle cell trait,[1] and their first child, a son, was born with sickle cell disease.[2] In January 2001, after the birth of the couple's son, Cynthia began receiving obstetrics and gynecology services from various physicians, including Doctor Rosner, who were employed by Reproductive Health, and practiced various birth control options prescribed by the doctors. On November 28, 2005, Cynthia elected to undergo a tubal ligation in an effort to achieve permanent sterility. The procedure was subsequently canceled, however, when complications arose with respect to the anesthesia.

¶ 4        Thereafter, on December 8, 2008, Cynthia had another consultation with Doctor Rosner to further discuss birth control options. At the conclusion of the consultation, Cynthia elected to undergo a mini-laparotomy[3] and tubal ligation procedure, to be performed by Doctor Rosner. Cynthia underwent the procedure on December 30, 2008. Unbeknownst to her, Doctor Rosner left one of her fallopian tubes and one of her ovaries intact.[4]

¶ 5        Subsequently, on June 24, 2009, Cynthia learned that she was pregnant. Cynthia gave birth to a daughter, Kennadi, on February 1, 2010, via cesarian section. At this time, Cynthia learned that her left fallopian tube and ovary had not been removed during the December 2008 procedure. Kennadi was subsequently diagnosed with sickle cell disease.

¶ 6                                              Complaint

¶ 7        Following Kennadi's birth and diagnosis, the Williamses filed a complaint against Doctor Rosner and Reproductive Health advancing claims of medical negligence and wrongful pregnancy. The complaint was amended twice. In the second amended complaint, the complaint at issue here, plaintiffs alleged that Cynthia had a consultation with Doctor Rosner, during which she communicated the following relevant information: that she and her husband were carriers of the sickle cell trait; that they had a son afflicted with sickle cell disease; and that they desired permanent sterility to avoid conceiving another child with sickle cell disease.

---

[1]People with one sickle cell gene and one normal gene have the sickle cell trait. Carriers of the sickle cell trait do not suffer from, or display, any symptoms of sickle cell disease, but can nonetheless pass the trait onto their children. Centers for Disease Control and Prevention, http://www.cdc.gov/ncbddd/sicklecell/traits.html (last visited Feb. 11, 2014).

[2]If both parents are carriers of the sickle cell trait, there is a 25% chance that the child they conceive will be born with sickle cell disease and a 50% chance that the child will also be a carrier of the sickle cell trait. Centers for Disease Control and Prevention, http://www.cdc.gov/ncbddd/sicklecell/traits.html (last visited Feb. 11, 2014).

[3]A mini-laparotomy is one of most common methods of tubal ligation. During the procedure, a small incision is made at or above the woman's pubic hairline. The fallopian tubes are then pulled through the incision, closed off and then put back into place. http://www.contraception.about.com/od/tuballigation/g/Mini-Laparotomy.htm (last visited Feb. 11, 2014).

[4]The complaint does not detail why Cynthia expected her ovaries to be removed during the ligation procedure. Based on the pleadings, it does not appear that Cynthia sought an oophorectomy to remove both ovaries in addition to a tubal ligation.

Doctor Rosner scheduled a bilateral tubal ligation procedure following their discussion. Thereafter, plaintiffs made the following allegations with respect to their wrongful pregnancy claim:

"36. In providing medical care to CYNTHIA WILLIAMS, Defendants BYRON ROSNER, M.D., and REPRODUCTIVE HEALTH ASSOCIATES, S.C., had a duty to possess and apply the knowledge and use the skill and care which a reasonably well-qualified physician would use in cases like that of CYNTHIA WILLIAMS.

37. Defendants, BYRON ROSNER, M.D., and REPRODUCTIVE HEALTH ASSOCIATES, S.C., breached that duty and were negligent in the care and treatment of Plaintiff CYNTHIA WILLIAMS in one or more of the following respects:

(a) Failed to review Cynthia Williams' prior medical records including, but not limited to, her previous operative notes.

(b) Failed to perform an ultrasound or other tests to determine and evaluate Cynthia Williams' reproductive organs prior to surgery.

(c) Failed to perform an adequate or appropriate tubal ligation on Cynthia Williams on December 30, 2008.

38. That as a direct and proximate result of one or more of the foregoing wrongful acts and/or omissions Defendants BYRON ROSNER, MD and REPRODUCTIVE HEALTH ASSOCIATES, S.C., proximately caused injury to plaintiffs CYNTHIA WILLIAMS and KENNETH WILLIAMS in that CYNTHIA WILLIAMS had an unplanned pregnancy and undesired fertility and gave birth to a child afflicted with Sickle Cell Disease, KENNADI WILLIAMS.

39. The birth of a child with Sickle Cell Disease–to wit, KENNADI WILLIAMS–was a foreseeable consequence of the negligence of Defendants BYRON ROSNER, M.D., and REPRODUCTIVE HEALTH ASSOCIATES, S.C., because Defendants BYRON ROSNER, M.D., had actual knowledge that Plaintiffs CYNTHIA WILLIAMS and KENNETH WILLIAMS were carriers of the Sickle Cell Trait, and that the birth of a child afflicted with Sickle Cell Disease would be a likely consequence of a failed tubal ligation.

40. That as a direct and proximate result of one of more of the foregoing wrongful acts and/or omissions of Defendants, BYRON ROSNER, M.D., and REPRODUCTIVE HEALTH ASSOCIATES, S.C., Plaintiffs CYNTHIA WILLIAMS and KENNETH WILLIAMS have become obligated for large sums of money for medical treatment for KENNADI WILLIAMS and will become obligated for large sums of money for further medical treatment as a result of CYNTHIA WILLIAMS' pregnancy, and the extraordinary expenses they will incur in raising KENNADI WILLIAMS to the age of majority.

* * *

**WHEREFORE** Plaintiffs CYNTHIA WILLIAMS and KENNETH WILLIAMS, individually, and as parents and next friends of KENNADI WILLIAMS, a minor, demand judgment against Defendants BYRON ROSNER, MD, and REPRODUCTIVE HEALTH ASSOCIATES, S.C., in the amount of money necessary to fully and thoroughly compensate CYNTHIA WILLIAMS for personal injury to her, emotional distress, and for lost wages, that far exceeds the jurisdictional minimum or

this Court, and for the *extraordinary expenses* that Plaintiffs CYNTHIA WILLIAMS and KENNETH WILLIAMS will incur in raising KENNADI WILLIAMS to the age of majority." (Emphasis added.)

¶ 8                                    Motion to Dismiss

¶ 9        Defendants responded with a motion to dismiss. In the motion, defendants urged the court to dismiss, with prejudice, plaintiffs' claim for wrongful pregnancy, or in the alternative, to "certify issues related to count I for interlocutory appeal pursuant to Supreme Court Rule 308." In support of their motion to dismiss the wrongful pregnancy count, defendants observed that there was no Illinois authority expressly permitting parents who file wrongful pregnancy actions to recover extraordinary expenses associated with raising a child born with a genetic defect or abnormality following an unsuccessful sterilization procedure. Instead, defendants maintained that, based on current prevailing legal authority, "wrongful pregnancy plaintiffs who allege a cause of action based on an unsuccessful sterilization procedure, generally are limited to recovering damages for the cost of the unsuccessful operation, pain and suffering, any medical complications caused by the pregnancy, the cost of the child's delivery, lost wages, and loss of consortium." Defendants further argued that plaintiffs were not entitled to recovery because they could not satisfy the element of proximate cause. Although a negligently performed sterilization procedure was undeniably the cause of Cynthia's pregnancy, defendants argued that it was not the cause of Kennadi's genetic defect. Accordingly, defendants maintained that plaintiffs' wrongful pregnancy claim failed as a matter of law.

¶ 10                                  Circuit Court Ruling

¶ 11        In a written order, the circuit court denied defendants' motion to dismiss, finding:

         "After the unsuccessful operation, Plaintiff, Cynthia Williams, conceived and gave birth to a child afflicted with sickle-cell disease. Plaintiffs allege that Defendant, Dr. Rosner, knew that Plaintiffs were carriers of the sickle-cell trait, were already raising one child with sickle-cell disease, and desired sterilization to avoid conceiving another child with the affliction. Count I seeks recovery, inter alia of the extraordinary expenses of raising a child with sickle-cell disease.

                                          * * *

         Illinois courts have yet to determine whether plaintiffs in a wrongful pregnancy action may recover the extraordinary expenses associated with raising a child afflicted with a congenital disease where the child's disease was reasonably foreseeable by the defendant physician who negligently performed the sterilization procedure. Absent authority barring Plaintiffs' prayer to recover extraordinary expenses, the court must resolve this motion in the light most favorable to Plaintiffs."

¶ 12                                  Certified Question

¶ 13        After denying defendants' motion to dismiss, the court subsequently entered a supplemental order *nunc pro tunc* and certified the following question for interlocutory review pursuant to Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Feb. 26, 2010)):

"Whether a plaintiff in an action for wrongful pregnancy may recover the extraordinary expenses of raising a child afflicted with sickle cell disease when the defendant physician knew (1) that the plaintiff and her husband were carriers of the sickle-cell trait, and (2) that the plaintiffs had previously conceived a child with sickle-cell disease, and (3) that the plaintiffs desired sterilization to avoid giving birth to another child afflicted with sickle-cell disease."

¶ 14    The court expressly found that the matter contained in the certified question "involve[d] a question of law as to which there is a substantial ground for a difference of opinion and, that an immediate appeal from the Order [would] materially advance the ultimate termination of the litigation."

¶ 15    This court allowed defendants' petition for interlocutory appeal and accepted the certified question for review.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, defendants argue that there is no authority in Illinois allowing plaintiff parents who file wrongful pregnancy actions to recover extraordinary damages. Specifically, defendants contend that neither the current body of Illinois case law pertaining to birth-related torts nor the traditional proximate cause framework allows expansion of the scope of damages in wrongful pregnancy actions to include such damages.

¶ 18    Plaintiffs, in turn, urge this court to reject defendants' invitation to impose an artificial limit on the damages available in wrongful pregnancy actions. They argue that "where, as here, the foreseeable consequences of the defendant's negligence is the birth of a child with a serious hereditary disease, and where that consequence in fact results, the defendant should be held liable for the extraordinary medical expenses that the parents will incur in raising the child to the age of majority because those damages proximately flow from the defendant's negligence."[5]

¶ 19    When reviewing a certified question pursuant to Supreme Court Rule 308, an appellate court is generally limited to answering the question certified by the trial court and will not determine the propriety of the underlying order. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 57-58 (2007); *Cincinnati Insurance Co. v. Chapman*, 2012 IL App (1st) 111792, ¶ 21. A question certified by a trial court pursuant to Rule 308 is subject to *de novo* review. *Johnston v. Weil*, 241 Ill. 2d 169, 176 (2011); *United Airlines, Inc. v. City of Chicago*, 2011 IL App (1st) 102299, ¶ 5. Given the procedural posture of this case, we note that the question presented for review is not whether the plaintiffs should, or would, prevail in this litigation; rather, the issue before this court is simply whether their complaint states a legally cognizable cause of action. *Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230, 234 (1987). Accordingly, to resolve

---

[5]We note that this court granted leave to the Illinois Trial Lawyer's Association (the Association) to file a brief *amicus curiae* in support of plaintiffs in accordance with Illinois Supreme Court Rule 345. Ill. S. Ct. R. 345 (eff. Sept. 20, 2012). The arguments contained in the Association's *amicus curiae* brief are substantially the same as the arguments contained in the Williamses' brief. In addition, the Association relies heavily on public policy principles to advocate the expansion of the scope of damages in wrongful pregnancy actions to include extraordinary damages.

this question we must accept as true all of the well-pleaded facts contained in plaintiffs' complaint without expressing any opinion as to defendants' liability. *Id.*

¶ 20      We begin our analysis by providing a brief overview of the three different birth-related medical negligence tort claims recognized in Illinois. "Wrongful birth" actions are suits brought by parents who allege that they would not have conceived a child or carried their child to term but for the negligence of the doctor who administered neonatal testing or genetic testing and failed to counsel them of the likelihood of giving birth to a physically or mentally impaired child. *Williams v. University of Chicago Hospitals*, 179 Ill. 2d 80, 84-85 (1997); *Siemieniec*, 117 Ill. 2d at 235. The premise underlying wrongful birth actions is that "prudent medical care would have detected the risk of a congenital or hereditary genetic disorder either prior to conception or during pregnancy" and that "[a]s a proximate result of this negligently performed or omitted genetic counseling or prenatal testing, the parents were foreclosed from making an informed decision whether to conceive a potentially handicapped child or, in the event of a pregnancy, to terminate the same." *Siemieniec*, 117 Ill. 2d at 235.

¶ 21      Plaintiffs who succeed in wrongful birth claims are entitled to recover extraordinary damages, including the medical, institutional and educational expenses that are necessary to properly manage and treat their child's congenital or genetic disorder. See, *e.g.*, *Siemieniec*, 117 Ill. 2d at 260 (finding that the parents of a hemophiliac child who had filed a wrongful birth claim against doctors who had provided prenatal genetic counseling and misinformed the prospective mother that she had a "very low" risk being a genetic carrier of hemophilia, had a cause of action for extraordinary expenses that they would incur in caring for their hemophiliac child during his minority); see also *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 74 (holding that plaintiff parents who filed a wrongful birth claim were eligible to recover the extraordinary damages they would incur in caring for their son who was born with Angelman Syndrome during his minority, but were precluded from recovering postmajority extraordinary expenses).

¶ 22      "Wrongful life" claims, in turn, are corresponding actions brought by a parent or guardian on behalf of a minor child who suffers from a genetic or congenital disorder. *Goldberg v. Ruskin*, 113 Ill. 2d 482, 484-85 (1986); *Siemieniec*, 117 Ill. 2d at 236. The basis for such claims is that the defendant medical provider either failed to accurately perform genetic screening tests and inform the child's parents about the hereditary nature of certain disorders, failed to accurately advise the child's parents about the genetic risks associated with childbirth, or failed to perform a surgical procedure intended to prevent the birth of a genetically disordered child. *Siemieniec*, 117 Ill. 2d at 236. "In a wrongful life case, the child does not assert that the negligence of the defendants caused his inherited or congenital abnormality, that the defendants could have done anything that would have decreased the possibility that he would be born with such defects, or that he ever had a chance to be normal. The essence of the child's claim is that the medical professional's breach of the applicable standard of care precluded an informed parental decision to avoid his conception or birth. But for this negligence, the child allegedly would not have been born to experience the pain and suffering attributable to his affliction." *Id.*

¶ 23      Courts in this state have repeatedly rejected wrongful life actions on public policy grounds. See *Siemieniec*, 117 Ill. 2d at 239-40 ("Resting on the belief that human life, no matter how burdened, is, as a matter of law, always preferable to nonlife, the courts have been reluctant to

find that the infant has suffered a legally cognizable injury by being born with a congenital or genetic impairment as opposed to not being born at all."). Given the public policy favoring life over nonlife, as well as the inherent difficulties associated with calculating damages in wrongful life actions, plaintiffs who have filed such actions have been precluded from recovering both general and extraordinary damages. See, *e.g.*, *Goldberg*, 113 Ill. 2d at 490 (finding that a child born with Tay Sachs disease could not recover general damages for the pain and suffering associated with his genetic disease, as there was "no rational way to measure non-existence or to compare non-existence with the pain and suffering of the child's impaired existence" (internal quotation marks omitted)); see also *Siemieniec*, 117 Ill. 2d at 251 (rejecting a hemophiliac child's wrongful life claim, in which he sought to recover extraordinary expenses, because "the public policy of this State to protect and to preserve the sanctity of all human life *** militates against the judgment that an individual life is so wretched that one would have been better off not to exist").

¶ 24    Finally, "wrongful pregnancy" or "wrongful conception" claims, the cause of action at issue in the instant appeal, are claims brought by parents of a child who is born following a negligently performed sterilization procedure. *Williams*, 179 Ill. 2d at 84. Parents who file such actions seek to recover compensation for a pregnancy that they had sought to avoid. *Id*.

¶ 25    Historically, plaintiffs in wrongful pregnancy actions have been limited to general damages, including costs associated with the "unsuccessful operation, the pain and suffering involved, any medical complications caused by the pregnancy, the costs of delivery, lost wages, and loss of consortium." *Cockrum v. Baumgartner*, 95 Ill. 2d 193, 196 (1983). For example, in *Cockrum*, our supreme court declined to expand the scope of damages permitted in wrongful pregnancy actions to include the costs of raising an unexpected, but otherwise healthy child, who was born following a negligently performed sterilization procedure. In doing so, the court expressed an "unwillingness to hold that the birth of a normal healthy child can be judged to be an injury to the parents" because such a notion "offends fundamental values attached to human life." *Id*. at 198. The court thus limited the plaintiffs' recovery to general damages.

¶ 26    Following its decision in *Cockrum*, the court was again called upon to address the permissible scope of damages in wrongful pregnancy actions in *Williams v. University of Chicago Hospitals*, 179 Ill. 2d 80, 84 (1997). In *Williams*, the plaintiffs were parents of a child diagnosed with attention deficit hyperactivity disorder (ADHD), who was born following a negligently performed tubal ligation procedure. In the complaint that the parents filed against the defendant doctor, the plaintiffs alleged that the doctor was aware that they were already the parents of another child who was hyperactive and learning disabled. The parents sought to recover general damages as well as the extraordinary expenses that they would incur in raising their special needs child to the age of majority, including expenses for psychological treatment and special education.

¶ 27    The supreme court, however, relying on "familiar principles of tort law, as well as considerations of public policy," rejected the plaintiffs' claim for extraordinary damages. *Williams*, 179 Ill. 2d at 86. Observing that plaintiffs in wrongful pregnancy actions must satisfy the elements of duty, breach and proximate cause to be entitled to damages, the court concluded that the allegations contained in the plaintiffs' complaint were insufficient to establish that their medical care provider proximately caused their injury, stating:

"There are no allegations in the present case that the defendants caused the child's condition or misled the parents about the likelihood that a child born to them would be defective. Indeed, the plaintiffs acknowledge in their briefs before this court that they do not contend that the defendants caused their son's condition or that the defendants could have detected the condition before the child was born. Nor do the plaintiffs allege that the defendants knew that Mrs. Williams sought sterilization as a means of avoiding the conception of a child with the particular defect involved here. Without determining in this case whether such an allegation would be sufficient to sustain recovery under a wrongful-pregnancy theory, we do not believe that proximate cause can be established in the absence of allegations forging a closer link between the defendants' negligence and the eventual birth of the defective child." *Williams*, 179 Ill. 2d at 87.

¶ 28    Emphasizing that a key element of proximate cause is foreseeability, the court explicitly rejected the plaintiffs' argument that the doctor's knowledge that their first child suffered from the same affliction was enough, in itself, to make the birth of another child with ADHD a foreseeable consequence of medical negligence. The court reasoned:

"[U]nder the allegations in this case the plaintiffs' injury cannot be said to be of such a character that an ordinarily prudent person should have foreseen it as a likely consequence of the alleged negligence. The plaintiffs do not allege that any act or omission by the defendants caused the child's condition, that the defendants knew of the possibility that a child conceived in the wake of a failed operation would suffer from a particular defect, or even that the parents were seeking to avoid a specific risk and that the defendants were aware of that, assuming that allegations of that nature would be a sufficient basis for liability." *Williams*, 179 Ill. 2d at 87-88.

¶ 29    Accordingly, given that the birth of the plaintiffs' ADHD-afflicted child was an unforeseeable consequence of the defendants' negligence, the court concluded that the parents were not entitled to recover the extraordinary expenses that they would incur in raising their child to the age of majority. *Williams*, 179 Ill. 2d at 89-90.

¶ 30    Both parties rely on *William*s in support of their respective arguments. Defendants argue that plaintiffs in this case, just like the parents in *Williams*, cannot satisfy the requisite element of proximate cause that is necessary to justify expanding the scope of recoverable damages in wrongful pregnancy actions to include extraordinary expenses. Specifically, defendants contend that Dr. Rosner's knowledge that plaintiffs already had a child diagnosed with sickle cell disease did not make it reasonably foreseeable that a negligently performed tubal ligation procedure would result in the birth of another child with the same congenital disorder.

¶ 31    Plaintiffs, in turn, maintain that *Williams* merely "stands for the uncontroversial proposition that a plaintiff in a negligence action may only recover those damages which are foreseeable as a likely consequence of the defendant's negligence." Thus, where the pleadings establish that the birth of a diseased child is a foreseeable consequence of a negligently performed sterilization procedure, then wrongful pregnancy plaintiffs should be able to obtain an award of extraordinary damages. We agree with plaintiffs.

¶ 32    In *Williams*, the court did not create a *per se* ban on extraordinary damages available to wrongful pregnancy plaintiffs. Rather, the *Williams* decision was decided on the narrow grounds of proximate cause and the deficiencies of the allegations contained in that complaint. Notably, the court specifically declined to resolve the question at issue in the instant case:

whether parents "with a particular need to avoid conception of a child, and who communicate that need to the defendant who performs the sterilization procedure, may recover as damages the extraordinary expenses of raising a child born in the wake of an unsuccessful and negligently performed operation." *Williams*, 179 Ill. 2d at 89. Unlike the parents in *Williams*, plaintiffs here have set forth allegations that if, taken as true, establish the requisite link between Dr. Rosner's negligence and Kennadi's condition. Specifically, plaintiffs alleged that they had a special need to avoid conception of additional children, as both were carriers of the sickle cell trait and were parents of a son born with sickle cell disease, and that they communicated their need to avoid conception of additional children with the same affliction to Dr. Rosner. As the court explained in *Williams*, to justify a finding that a defendant proximately caused a plaintiff's injury: " 'The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act.' " *Williams*, 179 Ill. 2d at 87 (quoting *Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 380 (1943)). Here, based on the allegations in plaintiffs' complaint, one can conclude that plaintiffs' injury, the birth of a second child afflicted with sickle cell disease, was of such a character that an ordinarily prudent person should have foreseen it to be a likely consequence of a negligently performed tubal ligation procedure.

¶ 33    Defendants, however, argue that even if the allegations contained in plaintiffs' complaint are true and the birth of a child with sickle cell disease was a foreseeable consequence, the element of proximate cause is still not satisfied because Dr. Rosner's negligence in performing the tubal ligation did not *actually* cause Kennadi to develop sickle cell disease as her condition was determined at conception; rather, his actions merely created a condition under which a child with sickle cell disease could be born. Defendants' argument, however, is based upon a misunderstanding and oversimplification of the element of proximate cause.

¶ 34    Proximate cause encompasses both "cause in fact" and "legal cause." *Nolan v. Weil-McLain*, 233 Ill. 2d 416, 431 (2009). "Legal cause" encompasses the aforementioned issue of foreseeability. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 456 (1992). Actual cause or "cause in fact," however, is satisfied only if there is evidence that the plaintiff's injury could not have occurred "but for" the defendant's conduct or if it can be determined that the defendant's conduct was a "substantial factor" or material element in creating the injury. *Id*. at 455-56. Here, although Dr. Rosner did not actually cause Kennadi's sickle cell disease, one can conclude that her birth and affliction was not only foreseeable, but that it would not have occurred "but for" the negligently performed tubal ligation procedure. Accordingly, we reject defendants' argument that plaintiffs' wrongful pregnancy claim fails on proximate cause grounds.

¶ 35    We are also unpersuaded by defendants' argument that the expansion of damages in this case would prove problematic from a public policy standpoint. Although defendants are correct that "virtually everyone is born with some condition, characteristic, or trait that might be construed as rendering the person other than healthy and normal" (*Williams*, 179 Ill. 2d at 90), we disagree that expanding the scope of damages in wrongful pregnancy cases would open the proverbial floodgates to allow the parents of every child born following an unsuccessful sterilization procedure to recover extraordinary expenses for any perceived

genetic abnormality, no matter how slight, possessed by their child. Continuing to adhere to the traditional proximate cause framework utilized by courts and requiring plaintiffs to provide evidence that a specific genetic abnormality was a foreseeable consequence of the defendant's negligence will preclude claims for extraordinary damages for every unforeseeable slight genetic abnormality. Moreover, this approach will better fulfill the fundamental purposes of tort law, which are to hold wrongdoers liable for injuries that are proximately caused by their actions and to provide just compensation to the injured parties. *Clark*, 2011 IL 108656, ¶ 29; *Siemieniec*, 117 Ill. 2d at 259.

¶ 36 Accordingly, for the aforementioned reasons, we decline to impose a rigid arbitrary limitation on damages available to wrongful pregnancy plaintiffs. Rather, we conclude that where as here, the birth of a child with a genetic abnormality is a foreseeable consequence of a negligently performed sterilization procedure and where the parents' desire to avoid contraception precisely for that reason has been communicated to the doctor performing the procedure, parents may assert a claim for the extraordinary costs that they will incur in raising their child to the age of majority. We emphasize that our disposition is limited to propriety of extraordinary damages in this case and we render no opinion regarding the other types of damages sought by plaintiffs in their complaint.

¶ 37 III. CONCLUSION

¶ 38 Certified question answered in the affirmative.