DAVID McDANIEL *et al.*, as Guardians of Pamela McDaniel, a Disabled Person, Plaintiffs-Appellants, v. ANITA ONG, Defendant-Appellee (California Gardens Nursing Center *et al.*, Defendants).

First District (5th Division)    No. 1—98—3437

Opinion filed December 30, 1999.

QUINN, J., dissenting.

Steven M. Levin, of Levin & Perconti, of Chicago, for appellants.

Lord, Bissell & Brook, of Chicago (Laura J. Ginnett, Diane I. Jennings, Paul J. Molino, and Leslie J. Rosen, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs David and Debra McDaniel, as guardians of Pamela McDaniel, a disabled person, brought suit against defendant Dr. Anita Ong for negligence in failing to diagnose Pam's pregnancy while she resided in a nursing home. The circuit court granted Ong's motion for summary judgment because it found insufficient evidence to demonstrate damages as a result of Ong's alleged negligence. David and Debra now appeal, arguing that questions of fact precluded summary judgment.

For the reasons that follow, we affirm.

In November 1995, David and Debra filed a third amended complaint against California Gardens Nursing Center (California

Gardens), DH1, Inc. (DH1), CD1, Inc. (CD1),[1] and Ong. The complaint alleged that Pam was born in 1961 with severe developmental disabilities including blindness, mental retardation, and cerebral palsy. Pam required total assistance with all activities of daily living, and she was admitted to California Gardens, a long-term care facility, in 1979. David and Debra were appointed as her successor guardians on October 7, 1994.

The complaint further alleged that, in April 1994, David and Debra were notified by Mount Sinai Hospital that Pam had been admitted and she was at least four months pregnant. On more than one occasion since that time, Pam required emergency visits to the hospital due to her condition and need for prenatal health care. In August 1994, Pam delivered a baby girl.

In counts I and II of the complaint, David and Debra alleged that California Gardens, DH1, and CD1 committed various statutory and regulatory violations, as well as various acts of negligence related to the pregnancy. These counts are not before this court.

In count III, David and Debra alleged that Ong, the physician in charge of Pam's medical care at California Gardens, was negligent in her treatment in one or more of the following ways:

"(a) Failed to see and examine PAM as often as necessary by her condition to assure adequate health care including her gynecological status;

(b) Failed to review PAM's total program of care, progress and problems in maintaining or improving her physical status including review of her menstruation patterns;

(c) Failed to see and examine PAM as often as required by her condition to assure care to maintain or improve her level of functioning;

(d) Failed to examine and visit PAM as necessary to assure adequate health care, including PAM's gynecological health, contrary to [77 Ill. Adm. Code § 300.1010(e) (eff. November 3, 1992)];

(e) Failed to review PAM's total care program and revise the program to maintain or improve PAM's status, including her gynecological status, contrary to [42 C.F.R. § 483.40(b)(1) (1994)];

(f) Failed to examine and visit PAM as needed to maintain or improve her level of functioning, contrary to [42 C.F.R. § 483.40 (c) (1994)];

(g) Failed to monitor, evaluate and appropriately treat and diagnose PAM'S medical and physical condition, including conducting adequate physical examinations for signs and symptoms of pregnancy; and,

---

[1]The complaint alleged that DH1 and CD1 were general partners of California Gardens.

    (h) Otherwise improperly and carelessly treated PAM."

David and Debra further alleged that, as a direct and proximate result of Ong's acts or omissions, Pam sustained injuries including sexual assault, undiagnosed high risk pregnancy, and lack of prenatal care. Pam suffered disability and disfigurement, pain and suffering, and medical expenses.

In February 1997, Ong moved for summary judgment. Ong first argued that an affidavit prepared by Martin Siglin, M.D., required summary judgment in her favor. Siglin opined that Ong complied with the standard of care in her examinations and treatment of Pam. Ong also argued that David and Debra could not establish that Ong's acts or omission caused any damages. Ong pointed to an excerpt from David's deposition testimony indicating that even if the pregnancy had been detected sooner it would not have been terminated. Ong claimed that David stated in his deposition that he and his family never discussed having Pam undergo an abortion and that it was something of which they would not have thought. Ong argued then that even if she had done everything that David and Debra claimed she should have done and the pregnancy had been detected sooner, the outcome would have been the same. None of the alleged damages are causally related to any of Ong's alleged negligent acts.

Ong attached the following excerpt from David's deposition:

    "Q. Did you ever have any discussions within your family about the potential of Pam having an abortion?

    A. No.

    Q. Is there any reason why not?

    A. It's something that we just wouldn't think of, I guess."

Although not included in the record, the other defendants apparently moved for partial summary judgment on the claims against them for failure to detect the pregnancy. In response to the motions as to the failure to diagnose the pregnancy, David and Debra complained that David's statements in the deposition were irrelevant because David was not Pam's guardian at the time Pam's pregnancy was diagnosed and therefore did not have a say in the decision. David and Debra stated that Pam's father was her guardian at the time but, because of his age and loss of cognitive function, he was unable to testify. David and Debra argued "[t]here is nothing in the record to suggest that had he been informed in a timely manner of the danger to his daughter and the complications arising from this unwanted pregnancy and birth, that he would not have wanted the pregnancy terminated." David and Debra also pointed to a portion of Ong's deposition which indicated that an unidentified obstetrician made the decision not to abort.

David and Debra attached a document prepared by Stephen C. Fox, D.O., stating his opinion that the care and treatment provided by Ong fell below the minimum standard of care and constituted negligence. Specifically, Fox stated that Ong:

"i. Failed to act when aware that there was no record of [Pam's] menses cycles and failed to follow-up with nursing staff regarding [Pam's] menses cycles and as a result did not detect her pregnancy.

ii. Failed to properly examine [Pam] on a monthly basis or more often as required by her condition and as a result did not detect her pregnancy in a timely manner."

Fox concluded that as a result of the negligence and failures of care by California Gardens and Ong, Pam was physically and sexually assaulted, which resulted in pregnancy, and which the facility and Ong failed to detect and properly care for, causing Pam to experience nutritional changes, frequent infections, bowel distress, and the trauma of the delivery process.

The record contains the portion of Ong's transcript and the medical record to which David and Debra referred in their argument regarding a decision not to abort. A progress note written May 11, 1994, stated:

"Evaluation at Mt. Sinai Hospital could detect no evidence of abnormality of the fetus. Further, it was felt by the obstetrical consultants that a therapeutic abortion was not an acceptable alternative at this time."

When asked about this note, Ong stated in her deposition that she read it to mean that the family refused an abortion.

On January 30, 1998, David submitted an affidavit stating that on April 22, 1994, his family and he were told that Pam was pregnant. On that day his father, Theodore McDaniel, was Pam's guardian. On October 7, 1994, David was appointed as Pam's guardian because his father was no longer competent. They were never told of the physical and psychological risks to Pam from the pregnancy and/or delivery and they were never told of the risks to the child. David further stated that had they been told of the risks and that an abortion was an option, they would have "seriously considered" it.

On May 13, 1998, the circuit court granted partial summary judgment to all of the defendants, finding that David and Debra failed to produce any evidence that Pam sustained damages as a result of defendants' alleged negligence in not detecting the pregnancy sooner. Ong moved to modify the May 13 order, pointing out that she had requested summary judgment, not partial summary judgment, and that the only allegations against her involved the alleged failure to detect the pregnancy earlier. Ong also moved to include language pur-

suant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). The circuit court modified the order by granting summary judgment to Ong and adding Rule 304(a) language. David and Debra appealed from the grant of summary judgment to Ong.

Summary judgment should be granted when the pleadings, depositions, affidavits, and admissions show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). When determining whether to grant summary judgment, the court must consider the evidence strictly against the movant and liberally in favor of the nonmovant. *Largosa v. Ford Motor Co.*, 303 Ill. App. 3d 751, 753 (1999). This court reviews an order granting a motion for summary judgment *de novo*. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 374 (1998). If the reviewing court determines that there is a genuine issue of material fact, then the summary judgment must be overturned. *Meck v. Paramedic Services*, 296 Ill. App. 3d 720, 725 (1998).

■ To succeed on a claim of medical malpractice, a plaintiff must demonstrate: (1) the standard of care applicable to the defendant's actions; (2) the defendant's deviation from the appropriate standard of care; and (3) the deviation from the standard of care proximately caused the plaintiff's injuries. *Brooks v. Illinois Masonic Hospital & Medical Center*, 240 Ill. App. 3d 521, 523 (1992), citing *Rohe v. Shivde*, 203 Ill. App. 3d 181 (1990).

David and Debra contend that the circuit court erred because the evidence presented shows that Ong's failure to timely diagnose Pam's pregnancy proximately caused injury to Pam. Specifically, they argue that a lost chance, or loss of chance, occurred because Theodore, Pam's guardian, was deprived of the opportunity to decide whether Pam's pregnancy should have been taken to term.

First we note that David and Debra do not argue that Ong's actions actually caused the pregnancy. We also observe that, while the complaint may be construed to suggest that Ong's failures could have caused some injury during the time in which the pregnancy remained undetected, David and Debra have provided no facts to demonstrate that different medical care should have been given to relieve suffering or to prevent some irreparable harm during the undetected period. The sole complaint as to Ong is that her failure to diagnose the pregnancy sooner precluded Pam from obtaining an abortion.

David's affidavit also suggests that he complains that Ong failed to advise him of the risks of the pregnancy or that abortion was an option. However, such claims are not included in the complaint. The complaint alleged multiple failures by Ong that led to the failure to discover the pregnancy until April 1994. It is unclear why David and

Debra referred to the portion of Ong's deposition regarding the progress note which indicated that an obstetrician made the decision not to abort. The date on that note is May 11, 1994, which was after the family learned of the pregnancy. Moreover, there is no medical expert testimony as to Ong's duty to advise David even if he were the guardian at that time of the risks of the pregnancy or that abortion was an option at that time. Fox's opinion only states that Ong failed to take certain actions that resulted in failing to detect the pregnancy in a timely manner. Thus, we address only the claim that the failure to diagnose the pregnancy sooner precluded Pam from obtaining an abortion.

Before we begin this analysis, we recognize that this claim inherently assumes that it was too late in April 1994 to obtain an abortion. Ong complains in her brief that David and Debra never detailed why Pam could not have obtained an abortion at that time. Because we determine that summary judgment was appropriate even if this assumption is true, we need not examine that question.

Ong argues that David and Debra cannot prevail because even if the pregnancy was discovered earlier and she had performed all of the acts David and Debra contend were required, the record fails to provide any evidence that an abortion would have been performed. The record is void of any information to show that Pam's guardian during this pregnancy, her father, would have chosen an abortion. Nevertheless, David and Debra contend that under the doctrine of loss of chance, which was recently reaffirmed by the Illinois Supreme Court, summary judgment should not have been granted.

In *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 98 (1997), the supreme court explained the concept of loss of chance as the harm resulting to a patient when negligent medical treatment is alleged to have damaged or decreased the patient's chance of survival or recovery, or to have subjected the patient to an increased risk of harm. The supreme court reaffirmed its rejections of a "better result" test, stating that the plaintiffs were not required to prove that an earlier call to the patient's physicians would have resulted in a more favorable outcome. *Holton*, 176 Ill. 2d at 107-08. Further, the plaintiffs contended that the failure of the defendant hospital's nursing staff to accurately report the progression of her decline into paresis proximately caused her paralysis. *Holton*, 176 Ill. 2d at 108. Two of the patient's doctors testified that they based their erroneous diagnosis and treatment decisions upon inaccurate and incomplete information regarding the patient's condition in the hours preceding her total loss of motor control. Had the doctors been given the opportunity to properly diagnose the patient's condition, they would have had the op-

portunity to treat her condition by ordering the appropriate treatment. Based on this record, the court ruled that the defendant was not entitled to judgment as a matter of law on the claim that an earlier call to the treating physicians would have resulted in the patient's recovery. *Holton*, 176 Ill. 2d at 108.

The *Holton* defendant also argued that judgment should have been entered in its favor because the patient's physicians rendered ineffective treatment before and after being notified of her loss of motor skills and therefore she did not establish that her physicians would have acted differently had they been notified earlier. *Holton*, 176 Ill. 2d at 108-09. The supreme court rejected this argument because the record contained testimony that the doctors would have undertaken a different course of treatment had they been accurately and promptly apprised of their patient's progressive paresis. *Holton*, 176 Ill. 2d at 109.

David and Debra also cite this court's opinion in *Meck v. Paramedic Services*, 296 Ill. App. 3d 720 (1998), which relied on *Holton*. In *Meck*, 296 Ill. App. 3d at 724, the plaintiffs sued for several acts of misconduct alleged to have occurred while a patient was transported to the hospital by ambulance. The defendants moved for summary judgment claiming that the plaintiffs could not prove proximate cause as a matter of law because the patient, having collapsed from cardiac arrest at home, did not have a greater than 50% chance of survival absent the alleged misconduct. *Meck*, 296 Ill. App. 3d at 724.

■ The *Meck* court explained that the lost chance doctrine recognizes that proximate causation in a medical malpractice case exists if the plaintiff can show that the defendant's malpractice, to a reasonable degree of medical certainty, proximately caused the increased risk of harm or lost chance of recovery to the injured party. *Meck*, 296 Ill. App. 3d at 722. Following *Holton*, the court rejected the "better result test," stating:

> " 'The traditional statement of proximate cause requires plaintiff to prove that defendant's negligence "more probably than not" caused plaintiff's injury. The "better result test" is not a part of plaintiff's burden of proof.' " *Meck*, 296 Ill. App. 3d at 728, quoting *Holton*, 176 Ill. 2d at 107.

The *Meck* court rejected the defendants' argument that they could not be held responsible for the alleged misconduct because the patient's odds of survival were not sufficiently high for defendants' actions to be causally related to his death. *Meck*, 296 Ill. App. 3d at 729. The record contained evidence to indicate that the patient could have had an excellent chance of recovery but suffered severe neurological damage and eventual death because of the defendants' misconduct. Because

the court found a genuine issue of fact as to whether the alleged conduct proximately caused the patient's death, it reversed summary judgment. *Meck*, 296 Ill. App. 3d at 730-31.

These cases reaffirm the principle that a plaintiff may prove medical negligence or misconduct by demonstrating that a defendant's actions or omissions proximately caused her injuries by depriving her of a chance for recovery. While a plaintiff need not prove that a better result would have been obtained, the cases do not lessen the plaintiff's burden of proving proximate cause.

We acknowledge that the chance to obtain an abortion is different than the patient's chance to receive surgery to prevent paralysis in *Holton* and the patient's chance to receive life-saving treatment in *Meck*. There is no question that the patients in those cases would have wanted the medical intervention that they claimed to have been denied. Consent to an abortion, however, cannot be assumed. While this is a factual difference, we do not believe it affects David and Debra's ability to sue based on a loss of the chance to obtain an abortion. David and Debra could rely on this doctrine and, accordingly, they should not be required to prove that the abortion would have been successful if undertaken so as to create a more favorable outcome. But, as in *Holton* and *Meck*, they are still required to show proximate cause.

■ The testimony in *Holton* established that the doctors would have undertaken a different course of treatment had they been accurately and promptly apprised of their patient's progressive paresis. The facts in *Meck* indicated that the patient could have had an excellent chance of recovery but suffered severe neurological damage and death because of the defendants' actions. In the instant case, David and Debra have not provided facts to demonstrate that they, the guardian, or any medical doctor would have undertaken a different course of treatment, *i.e.*, an abortion, if they had learned of the pregnancy at an earlier time. In fact, David and Debra do not even argue that if Ong had diagnosed the pregnancy earlier Pam would have obtained an abortion. David merely asserts in his affidavit that they would have "seriously considered" an abortion. While the facts may allege that Ong's actions deprived Pam of the chance to *consider* an abortion, they do not provide a basis to establish that Ong's actions deprived Pam of a chance for recovery by obtaining an abortion. The fact that David and Debra have not asserted that different action would have been undertaken to end the pregnancy if the pregnancy had been detected sooner leaves a gap in the proof as to proximate cause.

In *Aguilera v. Mount Sinai Hospital Medical Center*, 293 Ill. App. 3d 967 (1997), the plaintiff argued that the defendant's negligent

delay in administering a CT scan lessened the effectiveness of the patient's treatment. Although the plaintiff's experts testified that the delay in ordering a CT scan was a proximate cause of the patient's death, they also testified that the decision of whether neurosurgery should be performed would not have been made without input from a neurosurgeon. The two neurosurgeons who testified agreed with the treating neurologist that, even with an earlier CT scan, surgery would not have been appropriate. *Aguilera*, 293 Ill. App. 3d at 974-75. Without supporting testimony from a neurosurgeon, the court concluded that the plaintiff's experts' testimony was insufficient to show that neurosurgery should have occurred absent the defendants' negligence. The absence of expert testimony to show that an analysis of an earlier CT scan would have led to surgical intervention or other treatment that may have contributed to the patient's recovery created a fatal gap in the evidence of proximate cause. *Aguilera*, 293 Ill. App. 3d at 975.

In essence, the *Aguilera* court determined that while the defendants may have been negligent in failing to order the earlier CT scan, the evidence did not support a finding that the negligence caused a loss of chance for recovery because the evidence did not establish that if the CT scan had been ordered, the doctors would have performed the potentially life-saving surgery. As in *Aguilera*, David and Debra did not provide facts to show that Ong's actions caused a loss of chance to decrease Pam's injuries or suffering. The facts viewed in a light most favorable to the nonmovants only show that Ong's actions caused a loss of the chance to consider an abortion, not the chance to obtain an abortion. Although they were not required at summary judgment to prove their case, David and Debra were required to demonstrate an ability to offer evidence at trial that would support a finding that Ong's negligent acts or omissions proximately caused Pam's injuries. Because the record fails to provide sufficient facts, we affirm summary judgment in Ong's favor.

We consider with great interest the thoughtful dissent; however, it does not reach the central issue raised by the complaint—a breach of the standard of care which causes injuries to the plaintiff which she would not otherwise have suffered. In fact, the complaint does not allege any injury to the plaintiff. As we have noted, the reasoning in *Aguilera* mandates that liability rests upon a determination that the actions of the medical provider would have denied plaintiff a course of medical action upon which she and her doctors would have embarked.

The dissent cites an Indiana case (*Cowe v. Forum Group, Inc.*, 575 N.E.2d 630 (Ind. 1991)) and suggests that it is "strikingly similar" to the instant case. In *Cowe*, however, the plaintiff is the child seeking

damages for prenatal torts and wrongful life against the nursing home where the incompetent mother resided. The issues there are significantly different from those we now consider.

For the reasons stated, we affirm.

Affirmed.

THEIS, P.J., concurs.

JUSTICE QUINN, dissenting:

In affirming summary judgment for Dr. Ong, the majority holds that the plaintiff guardians have not demonstrated that "different medical care should have been given to relieve suffering or to prevent some irreparable harm during the undetected period." 311 Ill. App. 3d at 208. The basis of plaintiffs' complaint is that *no* medical care was given to Pam—not even that specifically required by Illinois statutes and federal and state health regulations applicable to the care owed to Pam.

It is undisputed that Pam was completely dependent upon the nursing home staff for assistance in every aspect of daily life. It is also undisputed that Pam was sexually assaulted and impregnated while in the care of the nursing home or in the care of persons to whom the nursing home entrusted Pam. This pregnancy was not discovered by the staff of the nursing home until Pam was in the nineteenth to twentieth week of pregnancy. The pregnancy was not discovered earlier because Dr. Ong and the nursing home staff failed to check Pam's menses even though they were required to do so by state and federal regulations and the nursing home's own policy.

The third-amended complaint was supported by an affidavit from Dr. Fox in which he averred that, due to the failure to diagnose this high risk pregnancy, Pam experienced nutritional changes, frequent infections, bowel distress, and the trauma of the delivery process.

In her motion for summary judgment, Dr. Ong argued that because plaintiffs failed to show that Pam's guardian would have terminated the pregnancy if he had been told of it earlier, the plaintiffs failed to establish that Ong's negligence caused Pam's injuries. The majority adopts this argument in holding "[t]he fact that David and Debra have not asserted that different action would have been undertaken to end the pregnancy if the pregnancy had been detected sooner leaves a gap in the proof as to proximate cause." 311 Ill. App. 3d at 211.

This court has rejected this argument in a wrongful pregnancy case. In *Williams v. University of Chicago Hospitals*, 281 Ill. App. 3d 1057 (1996), this court answered a certified question in the negative,

holding that a treating physician and hospital that had negligently failed to sterilize a mother could not be held liable for the special expenses associated with raising a child who was born suffering from attention deficit hyperactivity disorder, a genetic or congenital disorder. The court found that the "injury," the birth of an unhealthy child, was not one that an ordinarily prudent person ought to have foreseen as likely to occur as a result of the hospital's negligence. *Williams*, 281 Ill. App. 3d at 1065.

In so holding, the court further said:

"We wish to make it clear that we reach our decision on the basis of the law of causation and not on the argument of the defendants, accepted by some courts, that liability should be excused in the cases of wrongful pregnancy because the woman had the ability to terminate the pregnancy. We agree with the plaintiffs' argument that this is an improper justification for denying liability. There are, we are certain, many women who would undergo procedures to prevent pregnancy but who would not be willing to undergo any procedure which would terminate it. See *Cockrum*, 95 Ill. 2d at 207 (Clark, J., dissenting)." *Williams*, 281 Ill. App. 3d at 1066.

I likewise do not believe that plaintiffs need assert that they would have terminated the pregnancy to avoid summary judgment.

However, even if the majority were correct in requiring plaintiffs to assert that the guardian would have sought an abortion for Pam had timely notice been given, this case is still not appropriate for disposition by summary judgment. The issue of timing is of paramount importance in this case. Due to the failure to monitor Pam's menses, her pregnancy was not detected until the nineteenth or twentieth week. At the time the pregnancy was discovered, Pam's guardian was her father, Ted. The plaintiffs conceded that, due to a medical condition, Ted would not testify at any trial of this cause. David and Debra became guardians of Pam after the pregnancy was discovered. The purpose behind the state and federal regulations requiring that the menses of patients such as Pam be monitored relates to the importance of timely notice—to guardians as well as to medical personnel.

The majority assert that the record does not contain medical expert testimony as to Dr. Ong's duty to advise the family at the time of the discovery of the pregnancy as to its attendant risks or that abortion was an option at that time. In his deposition, plaintiffs' expert, Dr. Fox, testified that Pam's family was deprived of an opportunity to make a decision about what to do because of Dr. Ong's failure to diagnose the pregnancy in a timely manner. David's affidavit in opposition to defendant's motion for summary judgment also made clear that Dr. Ong never discussed with the family the risks the

pregnancy posed to Pam, the injuries likely to be suffered by Pam if she carried the baby to term, or that abortion was a treatment available even at the time the pregnancy was discovered in the nineteenth or twentieth week.

In David's deposition, he was asked why he never had any discussions concerning the possibility of Pam having an abortion. His response was, "It's something that we just wouldn't think of, I guess." This does not indicate to me that David and Debra were unalterably opposed to seeking an abortion for Pam. Rather, it is consistent with David's assertion that Dr. Ong failed to discuss the possibility of an abortion with the family. Further, the note in Pam's medical chart— "[f]urther, it was felt by the obstetrical consultants that a therapeutic abortion was not an acceptable alternative at this time"—is also consistent with plaintiffs' assertions that they were not consulted or advised by Dr. Ong as to what the alternatives were. At the very least, these are genuine issues of material fact, requiring the summary judgment to be overturned. *Meck v. Paramedic Services*, 296 Ill. App. 3d 720, 725 (1998).

The fact that Dr. Ong failed to discover the existence of the pregnancy and then failed to discuss alternatives available should not be excused due to Pam's father's inability to testify. Had Dr. Ong and the nursing home staff performed their statutory duties, the pregnancy would have been discovered within a few weeks, rather than 19 or 20 weeks. This would have given Pam's family time to change guardians, to discuss what was best for Pam, her unborn child, and the rest of the family.

In Illinois, violation of an applicable statute or ordinance is *prima facie* evidence of negligence. *Carey v. J.R. Lazzara, Inc.*, 277 Ill. App. 3d 902, 908 (1996). In deciding whether a complaint states a cause of action based on the negligent violation of a statute or an ordinance, courts generally inquire whether the legislation in issue was designed to protect human life or property and, if so, whether the plaintiff is a member of the class to be protected, and whether the injury is of the type that the statute was intended to protect against. If these three factors are present, the plaintiff may recover upon establishing that the defendant's violation of the ordinance or statute proximately caused plaintiff's injury. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 319 (1995).

Here, the state and federal regulations allegedly violated were clearly designed to protect human life, Pam was a member of the protected class, and the injuries Pam suffered were of the type that the regulations were intended to protect against. As to the issue of proximate cause, I believe that the complaint in the present case is analogous to one alleging wrongful birth.

As summed up by a federal court applying Illinois law: "[t]he nature of the tort of wrongful birth therefore, has nothing to do with whether or not a defendant caused the injury, but rather, whether defendant's negligence was the proximate cause of the parents being deprived of the option of making an informed and meaningful decision to either abort the fetus or give birth to a potentially genetically defective child." *Coley v. Commonwealth Edison Co.*, 703 F. Supp. 748, 748-49 (N.D. Ill. 1989), citing *Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230, 253 (1987).

In recognizing wrongful birth as a cause of action in Illinois, our supreme court expressed concern that refusing to do so would frustrate the fundamental policies of tort law: to compensate the victim, to deter negligence, and to encourage due care. *Siemieniec*, 117 Ill. 2d at 258. These same considerations should require that Dr. Ong be held liable if the plaintiffs can prove the allegations in their complaint to a trier of fact.

The supreme court in *Siemieniec* held that the parents of a child born with hemophilia could recover the extraordinary expenses incurred in order to properly manage and treat the child's hemophilic condition during his minority from a treating physician who was negligent in prenatal counseling.

In the instant case, plaintiffs do not allege that the baby born to Pam was "a potentially genetically deficient child" as that term was used by the court in *Siemieniec*. Indeed, both parties below focused strictly on the legal doctrines relating to medical malpractice to resolve the issues of this case. The plaintiffs do not seek as damages the expenses of raising the child born to Pam. They seek only damages for the injuries suffered by Pam. In *Cockrum v. Baumgartner*, 95 Ill. 2d 193, 196 (1983), our supreme court acknowledged that the majority of states have recognized a cause of action against a physician where it is alleged that because of the doctor's negligence the plaintiff conceived or gave birth to a healthy baby. In doing so, the courts have generally held that in such actions the infant's parents may recover for the unsuccessful sterilization, the pain and suffering involved with the pregnancy and birth, any medical complications caused by the pregnancy, the costs of the delivery, and lost wages and loss of consortium.

While Dr. Ong did not perform an unsuccessful sterilization on Pam, the complaint does state that Dr. Ong's negligence resulted in Pam's giving birth. I believe the facts of this case bring it within the purview of *Cockrum*. Indeed, I believe that the failure to check the menses of patients such as Pam greatly increases the likelihood that such patients will be sexually assaulted. Any person who sexually as-

saults such a patient would be aware that the possibility of being apprehended would significantly lessen the longer the assault went undiscovered.

The issues of proximate cause and duty are not completely separate, and the same policy considerations apply in determining whether a duty existed and whether proximate cause has been established. *Cannon v. Commonwealth Edison Co.*, 250 Ill. App. 3d 379, 384 (1993). Foreseeability is a factor in determining both duty and proximate cause. *Benner v. Bell*, 236 Ill. App. 3d 761, 765 (1992). If the result is one that an ordinarily prudent person would have foreseen as likely to occur, then the party will be held responsible, even if the precise injury which resulted is not foreseen. *Williams v. University of Chicago Hospitals*, 179 Ill. 2d 80, 87 (1997).

I believe that an ordinarily prudent person would have foreseen that patients such as Pam were likely to be injured in just this way. I also believe that policy considerations weigh heavily in favor of compensating the victim, deterring negligence and encouraging due care to those most in need of our protection.

The facts in *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 636 (Ind. 1991), are strikingly similar to those in the present case. There, the Indiana Supreme Court held that because a nursing home was aware of the disabilities and infirmities of a profoundly retarded adult female which rendered her unable to care for herself, the nursing home had a duty analogous to that of a common carrier to provide protection and care. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 636 (Ind. 1991). As here, the patient was sexually assaulted and the patient's pregnancy was not discovered until the fifth month. The Indiana Supreme Court held that the nursing home's duty to the patient extended to her unborn child. The court reversed the grant of summary judgment as to the child's prenatal claim.

The state and federal regulations upon which the complaint against Dr. Ong are based recognize the importance of providing comprehensive gynecological care to nursing home residents of childbearing age. Dr. Ong and the nursing home negligently failed to follow these regulations or the nursing home's own policy to monitor Pam's menses. As a result, Pam suffered injuries and her family was deprived of the opportunity to decide whether to terminate the pregnancy. For the aforementioned reasons, I would reverse the trial court's grant of summary judgment for Dr. Ong.